Sangita SATYAL, Plaintiff,

v.

Sukhdev SHAH and Vijaya
Shah, Defendants.

Civ. A. No. 90–1616–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 25, 1991.

Mitchell B. Weitzman, Washington, D.C.,
for plaintiff.

John Peter Connolly, Alexandria, Va.,
David A. Hirsch, Fairfax, Va., for defendants.

## ORDER

ELLIS, District Judge.

Defendants' threshold dismissal motion presents the question, unresolved in this circuit, whether a person employed to assist in providing custodial day care or babysitting services in a private home may claim the benefits of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA" or the Act), 29 U.S.C. § 201 *et seq.* More specifically, the matter is before the Court on defendants' Motion to Dismiss under Rule 12(b)(6), Fed. R.Civ.P., with respect to one aspect of Count I of plaintiff's complaint.[1] In that count, plaintiff alleges violations of the minimum wage and overtime provisions of the FLSA stemming from her status as both a live-in domestic in defendants' home and as their employee in providing custodial day care in defendants' home. For the reasons stated below, the Court concludes that defendants' day care operation is not a "preschool" under the Act, and hence plaintiff's day care employment is not covered by the FLSA. Accordingly, plaintiff's day care employment claim fails and must be DISMISSED.[2]

### Background

Plaintiff is a young female national of Nepal now residing in Maryland. Defendants, Mr. and Mrs. Shah, are also Ne-

---

1. The Court permitted the parties to file supplemental memoranda and materials. Accordingly, defendants' motion is treated as a motion for summary judgment. *See* Rule 12(b), Fed.R. Civ.P.

2. The Court previously denied defendants' motion with respect to plaintiff's employment as a domestic. The Act and pertinent regulations make clear that plaintiff is entitled to the minimum wage for all hours worked as a domestic. 29 U.S.C. § 202(a); 29 C.F.R. § 552.100 (1990).

palese nationals. They reside in Alexandria, Virginia. Mr. Shah is an employee of the International Monetary Fund. Plaintiff was employed by defendants from approximately November 1988 to April 1990.

Plaintiff alleges that defendants located her in Nepal and suggested a contract under which plaintiff would serve as the Shahs' live-in-domestic in exchange for room and board plus the minimum wage for forty (40) hours of work per week and time and one half for hours in excess of a forty hour week. Plaintiff alleges that she entered into the contract and performed her obligations, but defendants refused to pay her any wages, required her to work extraordinarily long hours, coerced her into working at a licensed day care center[3] operated out of defendants' home, and threatened her with dismissal, arrest or deportation if she complained about her treatment.

For purposes of the instant motion, the relevant allegation of the complaint is the following:

Defendants' child care center business constituted an enterprise engaged in providing child-care for commerce within the meaning of 29 U.S.C. § 203(s). At all relevant times, Defendants were engaged in the business of taking care of children from the metropolitan Washington, D.C. Northern Virginia area where families from Maryland, Washington, D.C. and Virginia brought their children to the home and business of defendants.

The complaint contains no allegations concerning the nature or operation of the business. Defendants moved to dismiss, *inter alia*, on the ground that the complaint's allegations fail to establish "enterprise" status for the business under the Act.

### Analysis

The minimum wage and maximum hour provisions of the FLSA, 29 U.S.C. §§ 206, 207, apply generally to employees who are themselves engaged in commerce or "employed in an enterprise engaged in commerce or in the production of goods for commerce". The Act defines this type of enterprise in part as "an enterprise whose annual gross volume of sales made or business done is not less than $500,000" exclusive of certain taxes. 29 U.S.C. § 203(s)(1)(A)(ii). Consequently, a plaintiff not herself engaged in commerce who seeks to establish covered employee status must show that she is employed in an "enterprise" that meets the volume of business criterion.

Defendants moved to dismiss on the ground that the complaint failed to allege that defendants' day care center ever conducted $500,000 worth of business. Plaintiff does not dispute this point. Read generously, however, the complaint also invites the inference that defendants' day care center still falls within the scope of the Act because it is a "preschool" under 29 U.S.C. § 203(r)(2)(A). That section includes a "preschool" within the definition of the term "enterprise". Further, § 203(s)(1)(B) provides in part that a "preschool" constitutes an "enterprise engaged in commerce or in the production of goods for commerce" regardless of the volume of business involved. Thus, if plaintiff is an employee of a "preschool" under the Act, then she is a covered employee.

Little authority exists to guide the determination whether a day care center may constitute a "preschool" within the meaning of the Act. Research discloses only two circuit court decisions that deal squarely with the issue. They reach opposite results. On one hand, in *Marshall v. Rosemont, Inc.*, 584 F.2d 319 (9th Cir.1978), the Ninth Circuit held that where two institutions termed kindergarten and nurseries were essentially custodial in nature and not regulated by the state of Arizona as part of its school system, they were not "preschools." On the other hand, in *U.S. Department of Labor v. Elledge*, 614 F.2d 247 (10th Cir.1980), the Tenth Circuit held that the Young Sooners Day Care Center, a

---

**3.** Va.Code § 15.1–37.3:12 provides that certain cities and counties in Virginia may regulate child care services and facilities by local ordinance. Defendants received a permit for their facility under Chapter 30 of the Fairfax County Code. *See* Fairfax Code § 30–3–1 *et seq.*

licensed Oklahoma day care facility, was a "preschool."

■ Although these decisions reached opposite results and reflect some disagreement as to reasoning,[4] they are not entirely irreconcilable. Each calls for a fact-specific inquiry, and significantly, each involves sharply differing facts. The *Rosemont* court emphasized the custodial nature of the institutions in question and noted that the enrolled children ranged in age from kindergarten down to infancy. *See* 584 F.2d at 320–21. By contrast, the *Elledge* court noted that the day care center there in issue accepted children up to twelve years in age, posted a schedule of activities, occasionally took children on field trips, provided transportation services, and afforded some general educational opportunities. Accordingly, the court held that application of the Act could not be avoided merely by the assertion of a primary emphasis on custody. *See* 614 F.2d at 251.

■ Given the juxtaposition of these cases, it is tempting to conclude that the Act draws a sharp distinction between day care programs that are solely custodial, and hence not covered, and those that include some educational structure and are covered. But the Act neither commands nor invites such a distinction. *See Elledge,* 614 F.2d at 250. Instead, the Act's purpose and legislative history point persuasively to another distinction, namely the distinction between day care or preschool businesses, whether or not purely custodial, and essentially casual baby-sitting programs, which are excluded from coverage by the Act and accompanying regulations. *See, e.g.,* 29 U.S.C. § 213(a)(15) (exempting persons employed to provide baby-sitting services on a "casual basis"); 29 C.F.R. § 552.105 (1990) (excluding some individuals who perform baby-sitting services in their own homes).[5] Thus, when Congress amended the Act in order to extend coverage to employees of schools, hospitals, and similar institutions, it made clear that it intended to provide the benefits of the Act to the working poor—those persons whose economic survival depended on their jobs but whose wages were barely sufficient to provide subsistence.[6] *See* S.Rep. No. 1487, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 3002–3005. Some employees of preschool or day care businesses may well fall into this category. But those who provide baby-sitting services on a casual basis or in their homes are not typically lower income workers. Thus, in 29 C.F.R. § 552.104(a), the Wage and Hour Administrator explains that the rationale

---

**4.** In particular, the Ninth Circuit in *Rosemont* adopted the district court's analysis, which noted that the Act fails to provide a definition of "preschool" and concluded that a "preschool", like an "elementary" or "secondary" school under the Act, must be an institution certified by or recognized under state law. *See also Smith v. Friends of Children of Mississippi, Inc.,* 103 Lab.Cas. (CCH) ¶ 34, 718 (S.D.Miss.1985) (Headstart program not registered by the state was not a "preschool"). The Tenth Circuit, in *Elledge,* disagreed with this reliance on state law; instead, it concluded that because Congress chose not to mention state law in connection with the term "preschool", the term should be given its ordinary meaning, as. elucidated by expert testimony and the statements of the Wage and Hour Administrator. In short, *Rosemont* makes state recognition determinative, while *Elledge* does not.

*Elledge* provides the more persuasive reasoning in this respect. That decision recognizes that Congress chose to define "elementary" and "secondary" schools by explicit reference to state law, but to omit such a reference in connection with a "preschool". *See* 614 F.2d at 250.

Accordingly, state law should not be determinative in the case of a preschool. Even so, *Elledge* cannot reasonably be read as holding that state law is invariably irrelevant. Rather, *Elledge,* reasonably read, is consistent with regarding state recognition as one of several factors to weigh in the determination. Thus, state law might be relevant to whether a facility is a business that must satisfy health, safety, or educational requirements.

**5.** Thus, *Elledge* did not hold that any day care establishment, no matter how small, automatically constitutes a "preschool" within the meaning of the Act. Nor could it reasonably do so, because day care on a very small scale may involve simply exempt baby-sitting services.

**6.** Consistent with this purpose, Congress also amended § 13 of the Act, 29 U.S.C. § 213, to exempt from coverage the teachers and administrators of elementary and secondary schools, who were not subsistence level employees. *See* Conf.Rep. No. 2004, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 3048.

for excluding casual baby-sitters is that such persons typically are teenagers or older persons and therefore "are usually not dependent upon the income from rendering such services for their livelihood." *See also* 29 C.F.R. § 552.105(a) (suggesting that "an individual who cares for the children of others in her own home" would not be responsible for compliance with the Act unless the operation, "depending on the particular facts," qualifies as a "preschool").

While the line separating "baby-sitting" from a "preschool" may be rather indistinct, in this case there is no doubt on which side defendants' facility falls. The day care is provided in defendants' home. Mrs. Shah's affidavit, which terms the operation "my babysitting facility," states that only a very small number of children are involved, typically three to five and in no event more than seven aside from her own children. The children are also extremely young, typically six weeks to two years old. Mrs. Shah also states that she never employed anyone other than plaintiff and, significantly, even plaintiff was only employed "on occasion". In addition, Mrs. Shah states that she provided no teaching services, did not post a schedule of regular activities, did not conduct field trips, and did not provide transportation services. Mrs. Shah does not depend on the day care operation for her livelihood; rather, the business appears to have been established for the purpose of assisting her immigration status. These factors point convincingly to the conclusion that defendants' day care program is essentially custodial baby-sitting. There is no organized instruction or educational structure. The few children involved are generally too young for this. This is not to say that no day care or baby-sitting operations come within the scope of the Act. To the contrary, it is not difficult to envision large-scale essentially custodial day care facilities that would employ precisely the type of workers on whom Congress intended to confer the protection of the Act. But the Act and regulations also make clear that baby-sitting on a small scale, as here, is different from a "preschool." Consequently, on the facts of this case, the Court is compelled to conclude that defendants' day care operation is not a "preschool" within the meaning of the Act.

Plaintiff offers no persuasive facts to the contrary. At most, she offers that she took the children for walks, prepared food for them, and read to them and played games with them. Even so, these facts do not equate to those presented in *Elledge.* Nor does the Fairfax County permit compel a different result. The permit does not recognize defendants' facility as part of any school system. To the contrary, the permit more strongly suggests baby-sitting than a preschool. The facility is licensed as a "home child care facility", described by County Code § 30–1–1(e) as essentially custodial rather than as a private school, nursery school, or child care center, all of which are governed by a separate code provision and are described as providing education or training. *See id.* § 30–1–1(d).

Finally, plaintiff's facts do not distinguish this case from 29 C.F.R. § 552.105(b), which provides:

> [a]n individual in a local neighborhood who takes four or five children into his or her home, which is operated as a day care home, and who does not have more than one employee or whose only employees are members of that individual's immediate family is not covered by the Fair Labor Standards Act.

This regulatory example is virtually indistinguishable from the instant case and provides additional support for the conclusion that defendants' facility is not a "preschool" within the meaning of the Act. *See also* 29 U.S.C. § 203(s) ("Any establishment that has as its only *regular* employees the owner thereof or the parent, spouse, child or other member of the immediate family of such owner shall not be considered to be an enterprise engaged in commerce or in the production of goods for commerce or a part of such an enterprise.") (emphasis added).

This conclusion is also consistent with the Act's legislative history and purpose. As her complaint demonstrates, plaintiff did not contract with defendants for the purpose of working in the day care opera-

tion and did not depend on that work for her livelihood; her intended and primary employment was as a live-in domestic. On the facts presented, it appears that plaintiff's work in the day care operation more closely resembled the irregular or "casual" type of baby-sitting that is exempt from the Act's coverage. *See* 29 C.F.R. § 552.104. Accordingly, her work at defendants' day care facility is not employment covered by the Act. Defendants' motion therefore must be, and hereby is, GRANTED.